Joshua E. Mackey (JM 1971)
Mackey Butts & Wise, LLP
3208 Franklin Avenue
Millbrook, New York 12545
Tel: (845) 677-6700
Fax: (845) 677-2202
jmackey@mbwise.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
SEAPORT LIGHTING INC.,

                              Plaintiff,

         -against-

TAPPAN ZEE CONSTRUCTORS, LLC
d/b/a TZC LLC, LIGHTSTYLE
AUTOMATED SYSTEMS INC., PHILIPS
LIGHTING d/b/a SIGNIFY NORTH
AMERICA CORPORATION and
WELSBACH ELECTRIC CORP.,

                          Defendants.
-----------------------------------------------------X

ECF CASE

**COMPLAINT**

Civil Action No.:

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000.00.

## VENUE

2. The contract at issue was to be performed and the subject matter of the contract at issue was utilized in Rockland County, New York and Westchester County, New York. Venue therefore lies in the United States District Court for the Southern District of New York pursuant to 40 U.S.C. §1391(b)(2).

{00192636 1}

## PARTIES

3.      Plaintiff, Seaport Lighting Inc. ("Seaport"), is a California, woman-owned corporation, that is organized and existing under the laws of the State of California, with its principal place of business located at 23151 Alcade Drive, Suite B3, Laguna Hills, California 92653.

4.      Seaport is an electrical wholesale supplier, whose concentration is focused on the procurement and logistical solutions required for large scale construction projects.

5.      Defendant, Tappan Zee Constructors, LLC d/b/a TZC LLC ("TZC"), is a New York limited liability company, organized and existing under the laws of the State of New York and maintains a principal place of business at 555 White Plains Road, Tarrytown, New York 10591.

6.      TZC is a joint venture comprised of Fluor Enterprises, Inc., American Bridge Company, Granite Construction Northeast, Inc. and Traylor Bros., Inc. that was formed to design and construct the Tappan Zee Hudson River Crossing Project (the "Project").

7.      Defendant, Lightstyle Automated Systems Inc. ("Lightstyle"), is a California corporation, organized and existing under the laws of the State of California and maintains a principal place of business at 5725 Kearny Villa Road, #M, San Diego, California 92123.

8.      Lightstyle is a full-service provider of lighting solutions and an integration specialist.

9.      Defendant, Philips Lighting d/b/a Signify North America Corporation ("Signify") is a Delaware corporation, organized and existing under the laws of the State of Delaware and maintains a principal place of business at 200 Franklin Square Drive, Somerset, New Jersey 08873.

10.     Signify is a manufacturer of lighting, lighting products and lighting services.

11.     Defendant, Welsbach Electric Corp. ("Welsbach"), is a Delaware corporation, organized and existing under the laws of the State of Delaware and maintains a principal place of business at 111-01 14th Avenue, College Point, New York 11356.

12.     Welsbach is a commercial electrical contractor that specializes in outdoor electrical construction and maintenance.

## STATEMENT OF FACTS

13.     Seaport first encountered TZC when Seaport was solicited by TZC to "supply all of the adequate and competent labor, supervision, tools, equipment, installed and consumable materials, services, testing devices and warehousing and each and every item of expense necessary for the procurement, fabrication, modifications, handling, hauling, unloading and receiving, assembly, testing, evaluation, programming testing, quality assurance and acceptance of the Roadway Lighting, Aesthetic Lighting, Permanent Platform Lighting and Catwalk Lighting Systems" (collectively, the "Lighting") on the Project, as was ultimately set forth in the Purchase Order entered into between Seaport and TZC on September 19, 2014.

14.     The initial discussions between Seaport and TZC, culminated in TZC providing Seaport with a "Request for Quote" based on a bill of material, with an identified manufacturer and specifications.  This was prior to the execution of the Purchase Order on September 19, 2014.

15.     Upon information and belief, the Request for Quote included certain surge protectors that were essential to the installation and maintenance of the Lighting on the Project.

16.     The manufacturer specified by the Purchase Order was Signify.

17.     Seaport requested that Signify enter into a direct relationship with Seaport. Seaport wanted a direct relationship with Signify, so that Seaport did not have to use Lightstyle, a distributor, in order to procure the Lighting for the Project.

18.     Signify denied Seaport's request to enter into a direct relationship.

19.     Upon receiving the denial, Seaport alternatively requested that it be able to use a distributor of its own choosing in order to procure the Lighting for the Project to ensure quality control.

20.     TZC declined to allow Seaport to use a distributor of Seaport's choosing and instructed Seaport to go through Lightstyle.

21.     Accordingly, Lightstyle remained the distributor of record for the Project and was subsequently responsible for distributing all of the lighting Signify manufactured for the Project to Seaport.

22.     Prior to final execution of the Purchase Order between Seaport and TZC, between May and July of 2014, a revised scope of work was provided by TZC to Seaport.

23.     Upon information and belief, the revised scope of work provided by TZC did not include the necessary surge protectors that were originally included in the Request for Quote related to the Lighting.

24.     Seaport brought this to the attention of TZC.

25.     Ultimately, on or about September 19, 2014, Seaport executed Purchase Order Number: 4012006219, which ratified the Request for Quote, in the amount of $17,719,829.00.

26.     The Purchase Order indicated that all installation of the Lighting on the Project was to be completed by Welsbach, as Welsbach was previously awarded a separate contract from TZC.

27.     On or about October 15, 2014, Seaport and Lightstyle executed purchase order number: 4012006219 in the amount of $12,618,385.64 for Lighting.

28.     On or about April 17, 2015, Signify received an executed purchase order number: 4012006219, related to the "lighting and controls for the Tappan Zee Bridge project" from Plaintiff.

29.     In or about October 2017, Seaport learned that multiple product malfunctions related to the Lighting on the Project arose.

30.     Seaport identified the source of these product malfunctions as being the result of non-compliance with the material specifications of the Project, because the revised scope of work, provided by TZC to Seaport between May and July of 2014, excluded the Project's necessary surge protectors that were material specifications of the Project.

31.     Subsequent to identifying the numerous product malfunctions, Seaport was unable to conclude its portion of the Project with TZC, which based on the milestone schedule was supposed to be July of 2018.

32.     TZC claimed the source of the product malfunctions as being caused by defective products.

33.     Upon information and belief, Signify claimed to the other parties that the source of the product malfunctions as being caused by incorrect product installation.

34.     On or about October 17, 2017, Seaport received a $148,000.00 payment from TZC.

35.     Seaport withheld this payment from Lightstyle, because Lightstyle had not performed according to the purchase order between Seaport and Lightstyle.

{00192636 1}

36.     The purchase order between Seaport and Lightstyle required that Lightstyle was to provide all network servers, network switches, computers, UPSs and devices necessary for permanent Lighting controls installation.

37.     On or about March 18, 2019, Seaport wrote to TZC indicating Seaport would seek to conclude its portion of the Project and that Seaport was also going to bill TZC for indirect costs incurred from July 2018 through March 2019, in the amount of $464,505.30.

38.     In or about April 2019, Seaport was still unable to conclude its portion of the Project, because of the alleged non-conformance of the products as per the material specifications.

39.     On or about November 9, 2019, Seaport repeated to TZC that TZC instructed Seaport to Seaport to enter into the contract with Lightstyle and that TZC did not allow Seaport to use its own distributor for the Lighting.

40.     Had Seaport been permitted to use a distributor of its choosing with the know-how for a project such as this it would be one less factor contributing to the product malfunctions on the Project.

41.     Lightstyle and Signify continued not to perform according to the Project's specifications, which unnecessarily delayed Seaport's closing of the Project.

42.     Between August 2018 and May 2019 Seaport has incurred both in-scope and out-of-scope costs totaling $512,565.00 and material costs totaling $268,680.00.  Such costs have continued to accrue since May 2019.

43.     Seaport has submitted a claim for payment to TZC, but TZC has failed to pay Seaport the amount due.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT, TZC
### (Breach of Contract)

44.     Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

45.     On or about September 19, 2014, Seaport and TZC entered into Purchase Order number: 4012006219 for Lighting, in the amount of $17,719,829.00.

46.     Subsequent to entering into the Purchase Order with TZC, Seaport was directed by TZC to enter into a separate purchase order with Lightstyle.

47.     On or about October 15, 2014, Seaport and Lightstyle executed purchase order number: 4012006219, in the amount of $12,618,385.64 for Lighting.

48.     In accordance with the terms of the Purchase Order and the direction of TZC, Seaport obtained the ordered products from Lightstyle.

49.     In or about October 2017, the products Seaport delivered to Welsbach for installation into the Project began to malfunction.

50.     Seaport and TZC began to discuss the reason(s) for the products malfunctioning.

51.     Seaport identified the cause of the products' malfunction as being the revised scope of work that was provided to Seaport by TZC, which was upon information and belief, revised to ensure compliance in functionality of the entire lighting system, but excluded the necessary surge protectors.

52.     Despite the Project having a close date and Seaport seeking to conclude its portion of the Project on or about July 31, 2018, Seaport has continued to perform according to the terms of the purchase order through and including present.

53.     TZC has continued to engage in various stalling tactics to keep the Project open without payment to Seaport while the issues related to the malfunctioning products are resolved.

54.     TZC has breached the contract, by providing a revised scope of work that excluded the necessary surge protectors for the functionality of the Project's lighting system and by continuing to stall in an effort to keep the Project open.

55.     Consequently, Seaport has suffered damages in an amount to be determined at trial, but in no event less than $512,565.00 of indirect costs incurred relating to having to keep the Project in an unfinished state and $268,680.00 of unpaid material costs for which TZC is withholding payment, totaling $781,245.00.

### SECOND CAUSE OF ACTION AGAINST DEFENDANT, TZC
**(Breach of the Implied Covenants of Good Faith and Fair Dealing)**

56.     Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

57.     On or about September 19, 2014, Seaport and TZC entered into Purchase Order number: 4012006219 for Lighting, in the amount of $17,719,829.00.

58.     In accordance with the terms of the Purchase Order and at the direction of TZC, Seaport purchased the required lighting from Lightstyle.

59.     In or about October 2017, the products Welsbach installed into the Project began to malfunction.

60.     Accordingly, Seaport was unable to conclude its portion of the Project and the Project continues to remain open.

61.     Upon information and belief, TZC has colluded with Lightstyle and Signify to prevent Seaport from closing the Project, thereby preventing Seaport's complete performance of the Purchase Order.

62.     In addition to preventing Seaport's performance of the Purchase Order, Seaport has also made a demand for payment from TZC for the additional costs it has incurred as a consequence of the Project remaining open.

63.     TZC has failed to pay the amount demanded by Seaport, thereby withholding the benefits of performance of the Purchase Order from Seaport.

64.     TZC breached the implied covenants of good faith and fair dealing, by preventing Seaport's complete performance of the Purchase Order and by withholding the benefits of performance of the Purchase Order from Seaport.

65.     Consequently, Seaport has suffered damages in an amount to be determined at trial, but in no event less than $781,245.00.

### THIRD CAUSE OF ACTION AGAINST DEFENDANT, TZC
### (Substantial Performance of Contract Allowing Recovery)

66.     Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

67.     On or about September 19, 2014, Seaport and TZC entered into Purchase Order number: 4012006219, for Lighting, in the amount of $17,719,829.00.

68.     In accordance with the terms of the Purchase Order, the Project's completion date was scheduled for July 31, 2018.

69.     To date, Seaport has been unable to conclude the Purchase Order due to numerous malfunctions of the products Welsbach installed in the Project, as per Welsbach's contract with TZC.

70.     Upon information and belief, such malfunctions are the direct consequence of TZC's revised scope of work that it provided to Seaport.  The revised scope of work, which excluded the necessary surge protectors, caused a deviation from the performance of the Purchase Order.

71.     Seaport has fully performed under the terms of the Purchase Order.

72.     Seaport has also unintentionally deviated from the Purchase Order.

73.     Consequently, Seaport has suffered damages in an amount to be determined at trial, but in no event less than $781,245.00.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT, TZC
### (Negligence)

74.     Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

75.     On or about September 19, 2014, Seaport and TZC entered into Purchase Order number: 4012006219, for Lighting, in the amount of $17,719,829.00.

76.     Upon entering into the Purchase Order, a contractual relationship was created between Seaport and TZC, whereby a duty of care arose.

77.     Specifically, TZC had the duty to provide a correct, complete scope of work to Seaport, by which Seaport would be able to "supply all adequate and competent labor, supervision, tools, equipment, installed and consumable materials, services, testing devices and warehousing and each and every item of expense necessary for the procurement, fabrication, modifications, handling, hauling, unloading and receiving, assembly, testing, evaluation, programming testing, quality assurance and acceptance" of the Lighting for the Project.

78.     By TZC providing a revised scope of work that excluded the necessary surge protectors from the Project's lighting system, TZC breached the duty it owed to Seaport to deliver a correct, complete scope of work.

79.     The installation of the Lighting without the necessary surge protectors, was a proximate cause of Seaport's sustained harm.

80.     TZC was negligent, by providing an incorrect and incomplete revised scope of work.

81.     Consequently, Seaport has suffered injury in an amount to be determined at trial, but in no event less than $781,245.00.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT, LIGHTSTYLE
### (Breach of Contract)

82.      Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

83.      On or about October 15, 2014, Seaport and Lightstyle executed a separate purchase order number: 4012006219, in the amount of $12,618,385.64 for Lighting.

84.      Seaport has performed according to the separate purchase order by paying Lightstyle for the products ordered, in the amount of $12,470,385.64, despite the fact that Lightstyle supplied defective products to Seaport, which were subsequently provided to Welsbach for installation.

85.      By Lightstyle providing defective products to Seaport, Lightstyle has failed to perform according to the terms of the executed separate purchase order.

86.      Lightstyle breached the contract, by providing defective products to Seaport.

87.      Consequently, Seaport has suffered damages in an amount to be determined at trial, but in no event less than $781,245.00.

## SIXTH CAUSE OF ACTION AGAINST DEFENDANT, LIGHTSTYLE
### (Negligence)

88.      Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

89.      On or about October 15, 2014, Seaport and Lightstyle executed a separate purchase order, number: 4012006219, in the amount of $12,618,385.64 for Lighting.

90.      Upon executed the separate purchase order, a contractual relationship was created between Seaport and Lightstyle, whereby a duty of care arose.

91.      Specifically, Lightstyle had the duty to provide non-defective products to Seaport, which Seaport would then supply to Welsbach for installation into the Project.

92.     By Lightstyle delivering defective products to Seaport, Lightstyle breached the duty it owed to Seaport to deliver non-defective products.

93.     The installation of the defective products delivered by Lightstyle was a proximate cause of Seaport's sustained harm.

94.     Lightstyle was negligent, by failing to provide non-defective products to Seaport for Welsbach to install into the Project.

95.     Consequently, Seaport has suffered injury in an amount to be proven at trial, but in no event less than $781,245.00.

### SEVENTH CAUSE OF ACTION AGAINST DEFENDANT, SIGNIFY
**(Breach of Contract)**

96.     Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

97.     On or about April 17, 2015, Signify received another separate executed purchase order, number: 4012006219, related to the "lighting and controls for the Tappan Zee Bridge project" from Seaport.

98.     As per the terms of the separate purchase order, Signify manufactured products related to the "lighting and controls for the Tappan Zee Bridge project."

99.     Inherent in this purchase order was that Signify would manufacture non-defective products related to the lighting and controls for the Project.

100.    Upon information and belief, Signify, in fact, manufactured defective products to Lightstyle, which Lightstyle then supplied to Seaport and Seaport ultimately supplied to Welsbach for installation into the Project.

101.    Seaport has performed according to the terms of the separate purchase order.

102.    Signify breached the contract, by manufacturing defective products related to the "lighting and controls for the" Project.

103.     Consequently, Seaport has suffered damages in an amount to be determined at trial, but in no event less than $781,245.00.

### EIGHTH CAUSE OF ACTION AGAINST DEFENDANT, SIGNIFY
**(Negligence)**

104.     Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

105.     On or about April 17, 2015, Signify received another separate executed purchase order, number: 4012006219, related to the "lighting and controls for the Tappan Zee Bridge project" from Seaport.

106.     Upon entering into the purchase order, a contractual relationship was created between Seaport and Signify, whereby a duty of care arose.

107.     Specifically, Signify had the duty to manufacture non-defective products, which Seaport would then provide to Welsbach for installation into the Project.

108.     By Signify manufacturing defective products for Seaport, Signify breached the duty it owed to Seaport.

109.     The installation of the defective products manufactured by Signify was a proximate cause of Seaport's sustained harm.

110.     Signify was negligent, by manufacturing defective products.

111.     Consequently, Seaport has suffered injury in an amount to be determined at trial, but in no event less than $781,245.00.

### NINTH CAUSE OF ACTION AGAINST DEFENDANT, SIGNIFY
**(Breach of Implied Warranty of Merchantability under UCC §2-314)**

112.     Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

113.     Implied in every contract for the sale of goods is a warranty that such goods shall be merchantable.

114.    Merchantability requires that the goods be fit for the ordinary purpose for which such goods are used.

115.    Signify is a merchant.

116.    Accordingly, upon entering into the separate purchase order with Seaport, Signify undertook to comply with the implied warranty of merchantability.

117.    By manufacturing defective goods, Signify breached the implied warranty of merchantability, because such goods were not fit for the ordinary purpose for which they were to be used.

118.    Consequently, Seaport has suffered damages in an amount to be determined at trial, but in no event less than $781,245.00.

## TENTH CAUSE OF ACTION AGAINST DEFENDANT, WELSBACH
### (Negligence)

119.    Seaport repeats and realleges all prior paragraphs as though fully set forth herein.

120.    Welsbach is a commercial electrical contractor that specializes in outdoor electrical construction and maintenance.

121.    Welsbach was solely responsible for product installation on the Project, as Welsbach was previously awarded a separate contract from TZC for the installation of the Lighting on the Project.

122.    Welsbach had the duty as a commercial electrical contractor, specializing in electrical construction and maintenance to act with the reasonable professional skill of a similarly situated electrical contractor.

123.    Upon information and belief, Welsbach breached its duty when it negligently installed the products supplied to it for the Project from Seaport, in such a way that the products began to malfunction.

{00192636 1}

124.    As a result of being an experienced electrical contractor, Welsbach should have reasonably foreseen that by failing to properly install the products on the Project, the products would malfunction.

125.    Welsbach performed substandard installation of the Lighting on the Project.

126.    Consequently, Seaport has suffered damages in an amount to be proven at trial, but in no event less than $781,245.00.

## PRAYER FOR RELIEF

WHEREFORE, Seaport prays for:

1.    Damages in an amount to be proven at trial, but in no event less than $781,245.00, on the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Causes of Action;

2.    Costs of suit incurred herein;

3.    Reasonable attorneys' fees; and

4.    Such other and further relief as this Court may deem just and proper.

Dated:  April 14, 2020
        Millbrook, New York

                    MACKEY BUTTS & WISE, LLP

                    By: _____
                         Joshua E. Mackey (JM 1971)
                         *Attorneys for Plaintiff*
                         3208 Franklin Avenue
                         Millbrook, New York 12545
                         (845) 677-6700

{00192636 1}